IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.   14-cv-00246-LTB-MJW

ROBIN DILLON,

        Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

        Defendant.
_____

ORDER
_____

This matter is before me on the parties' cross motions for summary judgment; specifically: 1) Plaintiff's Motion for Partial Summary Judgment filed by Plaintiff, Robin Dillon [**Doc #38**], and 2) Defendant's Motion for Summary Judgment filed by Defendant, Auto-Owners Insurance Company ("Auto-Owners") [**Doc #40**].  Oral arguments would not materially assist me in my determination of these motions.  After consideration of the parties' briefs and attachments, and for the reason stated, I DENY the relief requested in both motions.

**I.  Background**

On July 1, 2009, Plaintiff was driving a car insured by Auto-Owners under Policy No. 47-082-704-00 (the "Policy").  Plaintiff was stopped in traffic when she was rear-ended by a vehicle driven by Carlos Navarro.  Mr. Navarro claims that he hit Plaintiff after making an abrupt lane change when another driver, Alan Garcia, cut him off by pulling into his lane.  Plaintiff alleges that she sustained serious injuries from the accident.

In early 2010, Auto-Owners sought reimbursement from Mr. Navarro and Mr. Garcia for the value of the damaged vehicle driven by Plaintiff. This subrogation action was resolved through arbitration, on June 24, 2010, after the referee determined that Mr. Navarro (via his insurance carrier) was liable for 100% of the property damage.

Plaintiff subsequently filed suit against both Mr. Navarro and Mr. Garcia on March 11, 2011. She ultimately settled with Mr. Navarro's insurer (Farmers Insurance Company) for $50,000, which was the coverage limits of his automobile liability insurance policy. Plaintiff also settled with Mr. Garcia's insurer (State Farm Insurance Company) for $7,500. The coverage limits of Mr. Garcia's liability policy was $50,000.

Plaintiff then made a claim for the limit of the under-insured motorists ("UIM") coverage – under the Policy here, issued on the car she was driving – in the amount of $500,000 on December 27, 2012. After evaluating the claim, Auto-Owners conveyed a compromise/ settlement offer of $10,000 on July 31, 2013. Plaintiff did not accept this offer.

Thereafter, on December 30, 2013, Plaintiff filed this action against Auto-Owners in Boulder County District Court. The case was subsequently removed to this Court, pursuant to 42 U.S.C. §1441(a), based on original jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there is diversity of citizenship between the parties. The claims raised by Plaintiff against Auto-Owners are for: Breach of Insurance Contract and Statutory Bad Faith Breach in Violation of Colo. Rev. Stat. §10-3-1115 & §10-3-1116, based on "unreasonable delay and for lack of any reasonable basis for denying [Plaintiff's] claim." [Docs #1 & #46] Plaintiff has filed this motion for partial summary judgment in which she seek rulings limiting Auto-Owners' legal arguments. Auto-Owners' motion seeks summary judgment in its favor.

## II. Standard of Review

The purpose of a summary judgment motion under Fed.R.Civ.P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper. *See Atlantic Richfield Co. v. Farm Credit*

*Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).  Cross-motions for summary judgment are to be treated separately as the denial of one does not require the grant of another. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

### III. Exhaustion of Tortfeasors' Underlying Liability

The parties' cross-motions address two substantive issues in this case.  I first address whether Plaintiff is barred from collecting UIM benefits under the Policy, pursuant to Form 79429 which requires that an insured first exhaust the tortfeasors' underlying liability limits before UIM benefits are triggered.

The applicable language in Form 79429 of the Policy provides, in relevant part, that:

> With regard to an underinsured automobile, there is no coverage under this endorsement until the limits of liability of all bodily injury liability . . . insurance policies applying to the underinsured automobile and its operator have been exhausted by payment of judgments or settlements. [Doc #50-1]

Auto-Owners asserts that because she settled with Mr. Garcia for $7500, and his insurance policy liability limit was $50,000, Plaintiff failed to exhaust the underlying liability as required by the Policy.  And, as such, Auto-Owners maintains that it is entitled to summary judgment on Plaintiff's claims because she is not entitled to UIM benefits.

As an initial matter, Plaintiff argues that the exhaustion requirement in Form 79429 – which provides for no UIM coverage "until the limits of liability of all bodily injury liability . . . insurance policies applying to the underinsured automobile and its operator have been exhausted" – cannot be used by Auto-Owners as a defense to coverage, or as a basis for denying Plaintiff's claim, because it was not a part of or was omitted from the Policy.  Plaintiff provides the certified copy of the Policy – provided by Auto-Owners – which does not mention or contain Form 79429.

4

Plaintiff asserts that the "contention that this form was a part of the [P]olicy covering [Plaintiff] is strenuously disputed" as the "full [P]olicy contains no From 79429." [Doc #47]   Plaintiff argues that Auto-Owners is, in essence, improperly seeking to reform the contract.   Plaintiff also asserts that Auto-Owners offers no evidence that the insured was aware of its omission, or that it consented to modifying the Policy to insert Form 79429.

Auto-Owners concedes that "[d]ue to an underwriting computer glitch" Form 79429 was not included as one of the "Additional Forms For this Item" as set forth on the Declarations page from the Policy.  And, "[b]ecause Form 79429 was not listed on the declarations page, when [Auto-Owners] compiled the certified copy of the policy, including associated forms, Form 79429 was not included as part of the certified copy." [Doc #40]  Although Form 79429 was "inadvertently omitted," Auto-Owners contends that it was included as part of the Policy when it was issued in January of 2007.  Auto-Owners provides an affidavit signed by Betty Kung – the Underwriting Administrator for Auto-Owners – which avers that "[t]he applicable UM/UIM endorsement for the policy is form 79429 (7-07)" and that:

> Despite the fact that the policy contains UM/UIM coverage of $500,000, due to an underwriting computer glitch, the UM/UIM endorsement form number was inadvertently omitted for the declarations page from the policy issued for the applicable policy term.  Therefore, when Auto-Owners compiled the certified copy of the policy for purposes of this litigation, the applicable UM/UIM form was inadvertently omitted. . . .  Notwithstanding the aforementioned computer glitch, at the time of the subject collision, form 79429 (7-07) was a part of the policy, as it was the only UM/UIM endorsement form in use in the State of Colorado during the relevant time period. [Doc #40-2]

In her second affidavit, Ms. Kung further indicates that because the insured in this case purchased UM/UIM coverage as part of its automobile insurance policy, "coverage Form 79429 was added to the policy, and appears in the Declarations section as an 'Additional Form' associated

with the policy." Furthermore, "[i]n accordance with [Auto-Owners] policies and procedures, when an insured purchases a new policy, [Auto-Owners] sends the insured a complete copy of the policy, including associated forms and endorsements." [Doc #50-1]

Based on this record, it is clearly disputed whether Form 79429 was included with and/or part of the Policy either at the time is was issued, or at the time of the accident. Because an issue of material fact is in dispute, summary judgment in favor of Auto-Owners is precluded on this basis. *See Otteson v. U.S., supra,* 622 F.2d at 519.

Furthermore, a recent case from the Colorado Court of Appeals ruled that the exhaustion requirement contained in the Policy was inconsistent with Colorado Revised Statute §10-4-609(c), which provides that UIM coverage "shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained . . . up to the maximum amount of the coverage obtained pursuant to this section." In *Tubbs v. Farmers Insurance Exchange,* a Division of the Court of Appeals concluded that the plain language of §10-4-609(1)(c) "prevents a UIM policy from requiring that the insured party actually collect the *maximum* amount possible from the tortfeasor's liability policy before triggering the insured's own UIM coverage." ___ P.3d. ___, 2015 WL 2405416 (Colo. App. May 21, 2015)(unpublished)(mandate issued and remanded July 17, 2015)(emphasis added). The Court ruled that "[t]he plain and ordinary meaning of the statutory language requires that UIM policies cover the difference between the damages the insured party suffered and the limit of any liable party's legal liability coverage, regardless of whether the insured party's recovery from the liable party exhausted that limit." *Id.* Thus, it concluded that §10-4-609(1)(c) requires the insurer to cover the plaintiff for the damages sustained in excess of the other driver's legal liability limit in an

6

amount up to the limit of the UIM coverage at issue "regardless of how much, if any, he actually recovered under the other driver's legal liability coverage." *Id; compare Jordan v. Safeco Insurance Company of America, Inc.*, 348 P.3d. 443 (Colo. App. 2013)(*cert. denied* 2014 WL 1465025 (April 14, 2014))(ruling that, under §10-4-609(1)(c), UIM policies cover only damages in excess of the tortfeasor's legal liability limit and, because the parties stipulated that the plaintiff's damages were less than that, the Court did not address whether the exhaustion clause was unenforceable).

Accordingly, because: 1) a disputed issue of material fact exists as to whether the Policy includes Form 79429 (and its exhaustion requirement); and 2) the law in Colorado is that a UIM policy cannot require that the insured party actually collect the maximum amount possible from the tortfeasor's liability policy before triggering the insured's own UIM coverage under §10-4-609(1)(c), I conclude that Auto-Owners is not entitled to summary judgment in its favor on the basis that Plaintiff is barred from collecting UIM benefits under the Policy.

Finally, I address Plaintiff's assertion, set forth in her motion for partial summary judgment, that she is entitled to a ruling that Auto-Owners is collaterally estopped from asserting that Mr. Garcia was partially responsible for the accident. Plaintiff relies on the arbitration decision in the subrogation action – brought in early 2010 by Auto-Owners against Mr. Navarro and Mr. Garcia for the value of Plaintiff's damaged vehicle – which concluded that Mr. Navarro's insurance carrier was 100% liable for the property damage. Because that decision found Mr. Navarro 100% liable, Plaintiff argues that Auto-Owners is prevented from asserting in this case that Mr. Garcia is partially negligent for the accident.

I note that while Plaintiff contends that the issue is now "moot" – based on the ruling in

*Tubbs v. Farmers Insurance Exchange, supra* – I disagree. [See Doc #47]  Although UIM benefits are available to Plaintiff regardless of how much she actually recovered from the other drivers, whether Mr. Garcia is liable in this case effects the amount of the legal liability coverage available. *See* §10-4-609(1)(c)(requiring the insurer to cover a insured's claim for UIM benefits for the damages sustained in excess of the other driver's legal liability limit).

"The doctrine of collateral estoppel, also known as issue preclusion, attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *B–S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 662 (10th Cir. 2006); *see also Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001)(ruling that issue preclusion is a judicially created, equitable doctrine intended to "relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions").  The doctrine of issue preclusion will "bar a party from re-litigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."  *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006).  The Tenth Circuit has previously applied collateral estoppel to an arbitration award. *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 924-28 & n. 4 (10th Cir. 1992)(noting that the doctrine of collateral estoppel "bars relitigation of legal or factual issues that have previously been decided through arbitration"); *see also Rodriguez v. Bar–S Food Co.*, 567 F.Supp. 1241, 1245 (D.Colo. 1983).

Four elements are required to apply the doctrine of issue preclusion:  (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was

a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1990)(*citing United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992)); *see also Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999).

Auto-Owners maintains that issue preclusion is not applicable to the arbitration determination here because the first and fourth elements of the test cannot be met. It first argues that it is undisputed that the arbitration resolved only the subrogation action related to the property damage which is not at issue in the present case. Thus, it contends that the issue here is not identical to the issue resolved in the underlying proceeding. Because the arbitration involved "merely the apportionment of property damages" Auto-Owners contends that it is not identical, and cannot have a preclusive effect on any issue presented in the instant litigation.

I disagree. The issue presented and decided by the arbitration was the degree of liability attributable to Mr. Navarro and Mr. Garcia, respectively, in the underlying accident. Although the type of damages are different (property damages versus damages sustained by Plaintiff in the form of injuries and loss of income/earning capacity) the question answered by the arbitration was the issue of liability for the accident. That is identical to the issue of liability (as between the other drivers/tortfeasors) at issue here. As such, the first element of the issue preclusion test – whether the issue previously decided is identical with the one presented in the action in question – is clearly met.

Auto-Owners also argues that issue preclusion is not applicable because it did not have a full and fair opportunity to litigate the issue of liability at the arbitration under the fourth element.

Specifically, it contends that it did not have sufficient incentive to vigorously litigate the issue of liability during the arbitration, because the subrogation action against the tortfeasors' insurers was merely to recoup the property damages, which was only $3,739.40 as the full value of Plaintiff's vehicle. In addition, Auto-Owners notes that at the time of the arbitration, Plaintiff had not submitted a demand for UIM benefits. With property damage of less than $4,000, and with no UIM claim pending, Auto-Owners asserts that it had no financial incentive to fully litigate the issue of liability for the accident. Auto-Owners further asserts that the procedure employed at the arbitration proceeding was substantially different from the instant litigation; specifically, the arbitrator only reviewed and considered the supporting documentary evidence, and Auto-Owners was not able to conduct depositions, present witnesses, or otherwise engage in the litigation process to resolve its subrogation claim.

Although the underlying issue of the respective tortfeasors' liability is identical, I agree with Auto-Owners that the arbitration proceeding was far more limited in nature and narrow in focus to provide Auto-Owners with a full and fair opportunity to litigate the issue of the underlying liability. Auto-Owners clearly did not have the same incentive to litigate in the arbitration as its financial exposure was substantially less than here. In the arbitration, the only real issue was apportionment between Mr. Navarro and Mr. Garcia as to whose liability insurance would apply to reimburse Auto-Owners from property damage of approximately $4000. Plaintiff's subsequent request for UIM benefits, in the amount of $500,000, provides significantly increased incentive to litigate the issue of Mr. Garcia's liability. *See Salida Sch. Dist. R–32–J v. Morrison,* 732 P.2d 1160 (Colo. 1987). In addition, the limited nature of the arbitration procedure weighs against issue preclusion. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1174 (10th Cir. 2004)(indicating that the inquiry into

whether a party had a full and fair opportunity to litigate an issue focuses on "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties"). As such, I conclude that issue preclusion is not applicable because Auto-Owners did not have a full and fair opportunity to litigate the issue of liability.

As discussed above, I conclude that Auto-Owners is not entitled to summary judgment – as to the issue of whether Plaintiff is barred from claiming UIM benefits under the Policy because she failed to exhaust a tortfeasor's underlying liability limits – due to a disputed issue of material fact as well as the applicable law set forth in *Tubbs v. Farmers Insurance Exchange, supra*. In addition, Plaintiff is not entitled to a ruling, as a matter of law, that Auto-Owners is collaterally estopped from asserting that Mr. Garcia was partially responsible for the accident.

## IV. Bad Faith Claim Handling

I next address the issue of whether Auto-Owners is entitled to summary judgment on Plaintiff's claim of bad faith breach in the delay or the denial of her UIM claim. In so doing, I note that Plaintiff is not asserting a common law claim of bad faith breach, but instead is claiming that Auto-Owners violated Colorado Revised Statutes §10-3-1115 and §10-3-1116, which provide statutory remedies for an insured when an insurer unreasonably denies or delays payment of a covered claim.

As a threshold matter, I first address Plaintiff's request in her motion for partial summary judgment that I rule, as a matter of law, that Auto-Owners denied her request for UIM benefits (via correspondence dated September 2, 2013 and October 23, 2013) on the sole basis that she had been fully compensated for her injuries via her settlement with Mr. Navarro and Mr. Garcia. And, as a

result, Plaintiff argues that Auto-Owners has waived its right to refuse payment of benefits for a different reason. *See Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11, 15 (Colo. App.1985)(ruling that a contractual right may be waived when failing to assert that contractual term for denial, such as a defense based on failure of notice); *see also Walker v. American Standard Ins. Co. of Wisconsin,* 2011WL3876901 (D. Colo. 2011) (unpublished)(noting that an insurer waives its right to assert defenses in litigation that it did not raise when it denied liability on other grounds prior to litigation).

The September 2, 2013 letter from Auto-Owners' Claims Representative Chad Kimball to Plaintiff's attorney provides as follows:

> This correspondence is in response to your letter dated August 12, 2013 and September 4, 2013. Enclosed is Dr. Reichardt's report you requested. At this time we feel that [Plaintiff] has been fully compensated for her injuries by the previous settlements. If there is anything you feel we have overlooked or missed in relation to this claim, please feel free to forward it to us for review. [Doc #38-4]

Plaintiff responded to this letter by providing a report from her neurologist, Dr. Lemmon, indicating that she suffered from a traumatic brain or closed-head injury as a result of the accident. Auto-Owners then sent a response letter, dated October 23, 2013, stating that:

> This is in response to your letter dated October 8, 2013. Thank you for letter written by Dr. Lemmon. Are there injury specifics that [are] similar to the studies Dr. Lemmon is pulling his information from? If so what are they? If it is possible that ER was unable to pick up on a brain injury and a CT scan cannot pick up one either as Dr. Lemmon suggests, what does he see related the studies?
>
> As stated in our previous correspondence we feel that [Plaintiff] has been fully compensated by the settlement with the tortfeasor.
>
> If there is anything you feel we missed or would like to bring to our attention please feel free to forward it to us. Let me know if there are any questions. [Doc #38-5]

When it received no response to the questions raised in its October 23rd letter, Auto-Owners

again requested additional information from Plaintiff in correspondence dated November 26, 2013 and December 27, 2013. [Doc #40-1]  Plaintiff did not respond and, instead, filed this lawsuit on December 30, 2013.

Based on this record, I disagree with Plaintiff that it is undisputed that Auto-Owners denied her claim for UIM benefits.  The letters do not constitute a clear denial, and they could be read under the circumstances to show an continued investigation of her claim as it is clear that Auto-Owners were seeking additional information about her injuries.  As such, I find that whether or not Auto-Owners denied Plaintiff's claim is a disputed issue of material fact precluding a ruling, as requested by Plaintiff, that Auto-Owners is limited to asserting that it denied UIM benefits claim on the sole basis that she had been fully compensated for her injuries.

I likewise reject Auto-Owners request for entry of summary judgment in its favor on Plaintiff's statutory bad faith claims on the basis that it is undisputed that it acted reasonably in the handling of Plaintiff's UIM claim.  Section 10-3-1115(2) defines an insured's action as unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."  Thus, the only element at issue in the statutory claim is whether an insurer delayed or denied benefits without a reasonable basis. *Baker v. Allied Property and Cas. Ins. Co.* 939 F.Supp.2d 1091, 1107 (D.Colo. 2013)(*quoting Vaccaro v. Am. Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012)).  "The fact that an insurer's reason for denying or delaying payment of a claim was 'fairly debatable' weighs against finding that the insurer acted unreasonably." *Baker v. Allied Property, supra,* 939 F.Supp.2d at 1107 (citations omitted).

First, as discussed above, an issue of fact remains as to whether or not it denied Plaintiff's claim for UIM benefits.  As such, summary judgment is not appropriate on the basis that it was

reasonable for Auto-Owners to conclude that no benefits were due and owing based on Plaintiff's failure to exhaust benefits due under the tortfeasors' policies. *See Sanderson v. Am. Family Mutual Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App 2010)(ruling that in cases where "an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect"). To the extent that Auto-Owners seeks summary judgment on the reasonableness of its delay in paying Plaintiff's UIM claim – because her claim was fairly debatable and thus its coverage position was reasonable under the circumstances – I find that whether her UIM claim was fairly debatable, under this record, is a question to be answered by the jury. *See Vaccaro v. Am. Family Ins., supra,* 275 P.3d at 759 (ruling that reasonableness may be decided as a matter of law, in appropriate circumstances, but what constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury).

ACCORDINGLY, based on the foregoing, I DENY the Motion for Partial Summary Judgment filed by Plaintiff, Robin Dillon [**Doc #38**], and I DENY the Motion for Summary Judgment filed by Defendant Auto-Owners Insurance Company. [**Doc #40**]

Dated: August __7__, 2015 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE