IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  14-cv-00246-LTB-MJW

ROBIN DILLON,

        Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

        Defendant.
_____

ORDER
_____

This matter is before me on the following motions to exclude expert testimony:  1) Motion to Exclude Certain Opinion Testimony of Mary Ann Keatley, Ph.D and Dr. Rebecca Hutchins, Pursuant to FRE 702 and FRE 403, filed by Defendant Auto-Owners Insurance, Inc. ("Auto-Owners")[**Doc #52**]; and 2) Plaintiff's Motion to Exclude Testimony of Dr. Hal Wortzel and Dr. Stephan Kalat, filed by Plaintiff Robin Dillon [**Doc #72**].  Neither oral arguments nor testimony from the experts would assist me in my determination of these motions.  After consideration of the parties' briefs and attachments, as well as the testimony provided on Defendant's Motion to Exclude Certain Opinion Testimony of Janet N. Lemmon, Ph.D. on September 30 and October 1, 2015 [Docs #67 & 68], and for the reason stated, I GRANT Defendant's motion to exclude portions of proffered testimony from Dr. Keatley and Dr. Hutchins, and I DENY Plaintiff's request to exclude the expert testimony of Dr. Wortzel and Dr. Kalat.

## I. BACKGROUND

On July 1, 2009, Plaintiff was stopped in traffic when she was rear-ended by a vehicle driven by Carlos Navarro. Mr. Navarro claims that he hit Plaintiff after making an abrupt lane change when another driver cut him off by pulling into his lane. After she settled her bodily injury claims with the other drivers, Plaintiff then made a claim – under the insurance policy issued by Defendant Auto-Owners on the car she was driving – for the limit of the policy's underinsured motorist coverage (in the amount of $500,000) on December 27, 2012. Auto-Owners conveyed a compromise/settlement offer on July 31, 2013, which was not accepted.

Thereafter, on December 30, 2013, Plaintiff filed this action against Auto-Owners in Boulder County District Court and the case was subsequently removed to this Court based on diversity jurisdiction. The claims raised by Plaintiff against Auto-Owners are for: 1) Breach of Insurance Contract; and 2) Statutory Bad Faith Breach in Violation of Colo. Rev. Stat. §10-3-1115 & §10-3-1116, based on "unreasonable delay and for lack of any reasonable basis for denying [Plaintiff's] claim."

On October 21, 2015, I denied Auto-Owners' motion, filed pursuant to Fed. R. Evid. 702, challenging the opinion of Janet Lemmon Ph.D (Plaintiff's neuropsychologist) that Plaintiff incurred a concussive injury – or mild traumatic brain injury ("MTBI") – during the accident at issue that, in turn, has caused her permanent cognitive dysfunction. [Doc #71] Specifically, I ruled that while her conclusions were questionable, Dr. Lemmon's scientific methodology used to come to her opinions as to causation were sufficiently reliable in order to withstand my gatekeeping role under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Now pending before me is Auto-Owners' related motion seeking to exclude opinion evidence proffered by Dr. Mary Ann Keatley (Plaintiff's speech and language pathologist) and Dr. Rebecca Hutchins (Plaintiff's optometrist) to the extent that they have opined that Plaintiff's cognitive issues – in the form of her speech/language and visual deficiencies – were caused by the accident. [Doc #52]  As to Dr. Keatley, Auto-Owners argues that she is not qualified to opine about the cause of Plaintiff's MTBI as she has no medical or nursing degree and she is not certified in neurology, psychiatry or psychology, and her opinion is outside of the reasonable confines of her work in speech pathology.  In addition, her opinion as to general causation has no scientific basis and her opinion as to specific causation is not reliable.  As to Dr. Hutchins, Auto-Owners contends that she is not sufficiently qualified to testify about the diagnosis or treatment of brain injury, as such opinion is outside the reasonable confines of the discipline of optometry.  In addition, Auto-Owners contends that Dr. Hutchins' opinion is not derived from a proper scientific methodology for either general or specific causation.

Also pending before me is Plaintiff's motion seeking to exclude expert opinion evidence proffered by Auto-Owners, from its retained experts Dr. Stephen Kalat, a clinical neuropsychologist, and Dr. Hal S. Wortzel, an expert in the field of forensic neuropsychiatry. [Doc #72]  It is Dr. Kalat's opinion that there is insufficient evidence to conclude that Plaintiff sustained a concussion in the accident; rather, he believes that she had a stress reaction that exacerbated her pre-existing depression and anxiety.  It is Dr. Wortzel's opinion that if Plaintiff sustained an uncomplicated MTBI during the accident, it did not result in substantial and persisting neuropsychiatric impairment.  Plaintiff seeks to exclude these opinions as to the cause of her injury on the basis that neither Dr. Kalat nor Dr. Wortzel opined that the accident in this

case was capable of causing a particular injury in the general population (general causation).

## II.  RULE 702

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise."  Fed. R. Evid. 702.  Rule 702 imposes three requirements for the admission of expert testimony.  First, the expert must be qualified by specialized knowledge, skill, experience, training or education to testify on the subject matter of his or her testimony.  Second, the testimony must be based upon sufficient facts or data, the product of reliable principles and methods, and the product of the reliable application of these principles and methods to the facts of the case.  Finally, the proffered expert testimony must be relevant to an issue in the case and thereby assist the jury in its deliberations.  *Daubert v. Merrell Dow, supra,* 509 U.S. at 592-93. This court performs an important gatekeeping function to assure that each of these prerequisites is satisfied.  *Id.* (charging trial courts with the responsibility of acting as gatekeepers to ensure that expert testimony is both reliable and relevant); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)(clarifying that the court's gatekeeper function applies to all expert testimony, not just testimony based in science).

The proponent of expert testimony has the burden of establishing the admissibility of the expert's opinions under Rule 702 by a preponderance of the evidence.  *In re Breast Implant Litigation*, 11 F.Supp.2d 1217, 1222 (D. Colo. 1998).  The decision to admit or exclude expert testimony is reviewed for abuse of discretion.  *Truck Insurance Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004)(noting that the "trial court is afforded substantial deference in

its application of *Daubert" v. Merrell Dow, supra* and "we will only disturb the trial court's decision if we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances")(citations omitted).

### III. DR. KEATLEY

I first address Auto-Owners' motion seeking to exclude the causation opinion proffered by Mary Ann Keatley, Ph.D., Plaintiff's speech language pathologist. Plaintiff was referred to Dr. Keatley following the initial assessment of her cognitive functioning by Dr. Lemmon. On March 29, 2012, Dr. Keatley issued an initial report, after a cognitive-linguistic evaluation, containing her conclusions and her recommended course of treatment. [Doc #62-1] In that report, Dr. Keatley indicated that Plaintiff reported "difficulties across all cognitive clusters" including in the areas of memory, attention and concentration, language and communication, balance and sensory functioning, visual perception, executive functioning, financial management, safety, and emotional functioning. Dr. Keatley recommended the following treatment: cognitive-communication treatment; use of an organizational notebook; work in the area of executive functioning; language treatment to improve word retrieval, comprehension and thought formation skills; functional memory strategies and remedial memory activities; work in the areas of sequencing and logic and deductive reasoning; work in the area of abstract thinking; mental manipulation exercises; treatment in speed and capacity of information processing; attention process training; use of noise dampening ear filters; and continued vision therapy. [AR #62-1] Dr. Keatley then provided Plaintiff with cognitive linguistic therapy from March through September of 2012. [Doc #62-2]

Plaintiff proffers that Dr. Keatley will testify that it is her opinion that Plaintiff's symptoms were caused by an MTBI she received during the car accident at issue in this case. Specifically, Plaintiff indicates in her expert disclosures under Fed. R. Civ. P. 26(a), that Dr. Keatley has "personal knowledge concerning Plaintiff's injuries when she first treated her that were caused by the accident." [Doc #65-3] In her deposition testimony, Dr. Keatley was asked about whether or not the accident at issue in this case specifically caused the injury for which Plaintiff sought treatment. Dr. Keatley responded that because Plaintiff did not have the cognitive symptoms before the accident "I believed that there was a causal relationship" and that the treatment she provided to Plaintiff for her cognitive issues was a result of the accident. [Doc #62-4]

**A. Qualifications:**

Auto-Owners first argues that Dr. Keatley is not qualified to offer an opinion about the cause of Plaintiff's symptoms as she is has no medical or nursing degree, and she is not certified in neurology, psychiatry or psychology. As such, her opinion that Plaintiff's cognitive issues (specifically, her speech/language deficiencies) were related to a concussion or MTBI caused by the accident at issue in this case is outside of the reasonable confines of her work in speech-language pathology. I agree.

"The court must determine whether the expert is qualified by knowledge, skill, experience, training, or education" in order to render an opinion. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133 (10th Cir. 2009)(*quoting* Fed.R.Evid. 702). Any one of these qualifications can be sufficient to support a finding that an expert is qualified. *See* Fed.R.Evid. 702 Advisory Committee Notes, 2000 Amendments. Neither Rule 702 nor any other rule or precedent sets

forth a specific method by which a trial judge must determine the qualifications of an expert, and acceptance or rejection of an expert witness's qualifications is a matter within the discretion of the trial court. *United States v. Dysart*, 705 F.2d 1247, 1251 (10th Cir. 1983).

It is not disputed that Dr. Keatley is qualified to testify as to Plaintiff's reported and observed symptomology, as well as the cognitive language rehabilitation treatment she gave to Plaintiff to address those symptoms. She is likewise qualified to opine about the past and future effectiveness of the therapy and treatment provided by her to Plaintiff, as well as her prognosis and her need for future treatment. However, as to whether Plaintiff's linguistic deficiencies were caused by an MTBI arguably received by Plaintiff in the accident at issue, my research reveals no case law supporting the admission of a speech pathologist as qualified to determine the medical cause of a patient's language/speech issues. An expert's qualifications must not only be adequate in a general, qualitative sense – i.e., knowledge, skill, experience, training or education, as required by Rule 702 – but also must be "specific to the matters he or she proposes to address as an expert." *Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082, 1093 (W.D. Okla. 2009). I conclude that the medical cause of Plaintiff's symptoms are not "within the reasonable confines of [her] subject area." *Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 970 (10th Cir. 2001)(citations omitted)(ruling that a pediatrician may be qualified to establish general causation as to whether a language barrier could cause a mis-diagnosis, but he lacked the qualifications to determine whether any failure to use a qualified medical interpreter in that case caused the adult plaintiff's specific injuries).

 **B. Reliability:**

However, even if Dr. Keatley were qualified to opine as to the cause of Plaintiff's

cognitive speech issues, I exclude her opinion on the basis that it is not reliable. The applicable factors to the reliability assessment, set forth in *Daubert v. Merrell Dow, supra*, include: (1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has "general acceptance." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004)(discussing the four-factor test for determining whether an expert's methodology is "scientifically sound"). This list is neither definitive nor exhaustive. *Id.* (*citing Kumho Tire Co. v. Carmichael*, *supra*, 526 U.S. at 150).

In *Etherton v. Owners Ins. Co.*, 35 F.Supp.3d 1360 (D. Colo. 2014), *appeal docketed*, No. 14-1164 (10th Cir. April 29, 2014), the Court applied a step-by-step process that the Tenth Circuit has previously found to be a reliable means of determining injury causation. The first step in that process is to determine general causation, meaning whether or not the type of injury that the plaintiff sustained could have been caused by the type of collision at issue. *Id.* at 1367. The second step is to consider whether there was a temporal relationship between the plaintiff's injury and the collision. Finally, the third step is to perform a differential diagnosis, in which the expert assesses specific causation by examining the plaintiff's physical symptoms, medical records, reported medical history, and the applicable medical literature to identify and rule out alternative causes of the plaintiff's injury via a differential analysis. *Id.* (*citing Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 878 (10th Cir. 2005)); *see also Neiberger v. Fed Ex Ground Package System, Inc.,* 566 F.3d 1184, 1190–91 (10th Cir. 2009)(describing the method as "generally accepted in the medical community and by the courts" as considering "the possible

recognized causes [of a condition] and eliminat[ing] those contradicted by the evidence"). Auto-Owners argues that Dr. Keatley's ultimate opinion as to causation is not reliable as it is not the product of the causation methodology set forth in *Etherton v. Owners Ins. Co.*, *supra*.

Plaintiff asserts, in response, that because Dr. Keatley is a *treating* physician – as opposed to a retained expert – her opinion regarding the cause of Plaintiff's symptoms is subject to a different standard. Plaintiff refers to the language in *Etherton v. Owners Ins. Co.*, *supra,* that "it appears that the opinions of treating physicians on injury causation – based on medical knowledge, physical examination, and patient histories – are routinely admitted in federal courts" as reliable. 35 F.Supp.3d at 1372 (citations omitted); *see also Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007)(allowing a treating physician to testify about causation even though he was not disclosed as an expert pursuant to Fed. R. Civ. P. 26(a)(2)(B)).

In her deposition, Dr. Keatley indicated that she was providing an opinion that the treatment she gave Plaintiff was "from" this accident [Doc #62-4 pg. 32 Doc #65-4 pg. 93] and that it was her job, as a speech pathologist, to diagnose Plaintiff with a "cognitive brain disorder, secondary to traumatic brain injury." [Doc #62-4 pg. 40] However, she consistently indicated that she did not independently determine the cause of Plaintiff's linguistic issues. When asked if she performed any "causation analysis" to determine if the symptoms were caused by the accident, she said no, that she just read Dr. Lemmon's report. [Doc #62-4 pg. 29, 34-35 Doc #65-4 pg. 66-68, 96] Although she noted a temporal element to Plaintiff's symptoms – in that Plaintiff reported that they started after the motor vehicle accident in this case – Dr. Keatley indicated that she believed that the symptoms she treated were from cumulative injuries. [Doc #62-4 pg. 33, 42-45 Doc #65-4 pg. 61]

Based on Dr. Keatley's deposition testimony, it is clear that she did not perform her own scientific methodology to assess the cause of Plaintiff's linguistic issues. First, despite Plaintiff's cursory argument to the contrary, it is clear that Dr. Keatley did not perform a differential diagnosis to determine causation; she specifically testified that it was not her job to rule out other causal factors via a complete medical history. [Doc #62-4 pg.33] Rather, she relied on Dr. Lemmon's test results and reporting. To the extent that Dr. Keatley's opinion is based on a temporal connection, her assertion that she "believed that there was a causal relationship" was based on the fact that Plaintiff did not have the cognitive symptoms before the accident. [Doc #62-4 pg. 30] Such methodology is insufficient to constitute a reliable opinion. *Etherton v. Owners Ins. supra*, 35 Fed.Supp.3d at 1369-70 (although a temporal connection may be considered as one factor in assessing causation, it may not be "the sole factor relied upon")(*citing Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003)).

I conclude that Dr. Keatley's opinion of causation is primarily based on the opinion of Dr. Lemmon and is not the result of the application of scientific methodology. Accordingly, I find that Plaintiff, as the proponent of Dr. Keatley's opinion, has failed to demonstrate that the process by which she derived her opinion on causation is reliable. *See Basanti v. Metcalf,* 35 F.Supp.3d 1337, 1342 (D. Colo. 2014)(excluding physician's proffered expert testimony as to causation).

### IV. DR. HUTCHINS

Auto-Owners also asserts that Dr. Rebecca Hutchins' opinion as to causation should be excluded. Dr. Hutchins is a doctor of optometry who treated Plaintiff's vision problems

following a referral by Dr. Lemmon. In her initial report dated March 27, 2012, Dr. Hutchins opined that Plaintiff's relevant visual problems/diagnoses of convergence insufficiency (a tendency for the eyes to turn out at near); general binocular vision disorder (eyes that don't work well together); and ocular motor dysfunction (poor saccades) "are frequently seen after a concussion or brain injury and there is a reasonable degree of medical probability" that they are as a result of the motor vehicle accident at issue here. [Doc #62-3] Dr. Hutchins also opined that there is a reasonable degree of medical probability that her photophobia (light sensitivity); headache[s]; and accommodative disorder (difficulty changing focus) were exacerbated by the motor vehicle accident. [Doc #62-3] Plaintiff's expert disclosures pursuant to Fed. R. Civ. P. 26(a) indicate that Dr. Hutchins has "personal knowledge concerning Plaintiff's injuries when she first treated her that were caused by this accident." [Doc #65-3]

**A. Qualifications:**

Auto-Owners firsts asserts that Dr. Hutchins, as a doctor of optometry, is not qualified to testify that the motor vehicle accident in this case caused or exacerbated Plaintiff's visual problems. I again agree.

While she may be qualified to testify that the vision problems Plaintiff experienced could have been caused by an MTBI – with a foundation that such information is within her expertise – she is not qualified to testify that Plaintiff received a brain injury at the time of the accident that, in turn, caused her vision problems. Plaintiff has not referred me to, nor has my research revealed, any legal precedent of an optometrist, without any other specific training or knowledge, providing testimony as to the cause of a visual diagnosis or symptom. As Plaintiff's treating optometrist, Dr. Hutchins is certainly qualified to testify as to Plaintiff's various visual

11

diagnoses and her symptomology, as well as the treatment she provided, the past and future effectiveness of the treatment, and her prognosis/need for future treatment. However, she is not qualified by specific knowledge, skill, experience, training, or education to render an opinion as to any underlying brain injury, allegedly received in the accident here, that may have caused Plaintiff's vision problems. Any opinion as to causation of Plaintiff's visual impairments is, in this case, outside of the reasonable confines of the subject area of optometry. *See Ralston v. Smith & Nephew Richards, supra,* 275 F.3d at 970; *Graves v. Mazda, supra,* 675 F.Supp.2d at 1093.

### B. Methodology

In addition, I agree with Auto-Owners that even if she were qualified to testify on causation, Plaintiff has failed to meet burden to show admissibility of Dr. Hutchins' unsupported opinion because she failed to show any methodology was utilized in developing such opinion. Dr. Hutchins' report provides no analysis or methodology for her statement that "there is a reasonable degree of medical probability" that Plaintiff's visual problems are "related to the MVA of July 1, 2009." [Doc #62-3] Rather, it appears that Dr. Hutchins' opinion is solely based on Dr. Lemmon's opinion and Plaintiff's self-reporting. Such lack of methodology renders her opinion about causation unreliable as merely "subjective belief or unsupported speculation." *Goebel v. Denver & Rio Grande, supra*, 346 F.3d at 991 (*quoting Daubert v. Merrill Dow, supra*, 509 U.S. at 590).

### V. DR. WORTZEL & DR. KALAT

In her motion seeking exclusion of the testimony to be presented by Auto-Owners' retained experts, Plaintiff challenges the proffered opinions of Dr. Hal Wortzel and Dr. Stephen

Kalat that the motor vehicle accident at issue in this case did not cause Plaintiff to incur an MTBI or concussion that, in turn, caused long-term cognitive symptoms.

In her motion Plaintiff does not challenge the witnesses' qualifications or the relevancy of their proffered testimony. Rather, she contends that the opinions of Drs. Wortzel and Kalat are not reliable in that neither expert reviewed the details and circumstances of the accident in this case or addressed general causation; specifically, whether the type of accident in this case could or could not result in an MTBI or concussion. Injury causation requires a showing of general causation which addresses whether an event is capable of causing a particular injury or condition in the general population. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005). In other words, general causation refers to whether the accident in question is, in the abstract, capable of producing the type of injury suffered. *Neiberger v. Fed Ex, supra,* 566 F.3d at 1190-91. Plaintiff asserts that neither expert formulated an opinion about general causation before developing an opinion as to specific causation.

As an initial matter, I first address Plaintiff's contention that the supplemental affidavit of Dr. Wortzel and the supplemental report of Dr. Kalat – which were both filed by Auto-Owners in response to the motion as attachments to its Response [Doc #76-3 & #76-4] – should not be considered as they constitute new information that was not properly disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(B) and 37(c)(1)(noting that if a party fails to provide information as required by Rule 26(a) "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"); *see also R.C. Olmstead, Inc., v. CU Interface*, *LLC*, 606 F.3d 262, 270 (6th Cir. 2010)(applying the rules). These supplemental reports do not constitute new information or new opinions not

13

previously disclosed to Plaintiff. Rather, they just reiterate both opinions that Plaintiff herself did not incur a MTBI in the accident, based on the medical records and the applicable diagnostic criteria.

Nonetheless, it is clear from their initial reports and their testimony at Dr. Lemmon's hearing, that Dr. Kalat's and Dr. Wortzel's methodology for assessing causation assumes, in essence, that the circumstances of the car accident in this case were sufficient to cause an MTBI injury in the general population, but that it was their opinion – based on the specific medical evidence of this case – that it did not result in such injury to Plaintiff here. So, the purpose of Dr. Kalat's and Dr. Wortzel's testimony is primarily to challenge Plaintiff's expert's conclusion as to specific causation. In addition, I note that to the extent Auto-Owners is challenging Plaintiff's evidence of general causation, it has retained a forensic biomechanics expert (Charles E. Bain) who is proffered to testify that the circumstances of the accident – defined by him as "a low acceleration rear-end motor vehicle collision that subjected [Plaintiff] to minimal accelerations and forces" – would put a driver at essentially zero risk of an MTBI. [Doc #71]

Hence, I reject Plaintiff's assertion that Dr. Wortzel's and Dr. Kalat's methodology underlying their opinions on specific causation are unreliable because they failed to render an opinion as to general causation. Their opinion as to general causation is that the general population could have incurred a MTBI or concussive injury (although they both question the likelihood of the event) in an accident such as the one at issue here.

## IV. CONCLUSION

I agree with Auto-Owners that Dr. Keatley and Dr. Hutchins are not qualified to present expert testimony that the motor vehicle accident at issue in this case caused her cognitive language and visual impairments and, in addition, that those opinions are not sufficiently reliable to be admissible under Rule 702 and *Daubert v. Merrill Dow, supra*. In addition, I reject Plaintiff's argument that Dr. Wortzel's and Dr. Kalat's opinions are unreliable in that they fail to assess general causation because I find that both experts essentially concede that, although unlikely, the type and circumstances of the accident at issue here could have produced an MTBI in the general population.

ACCORDINGLY, for the reasons set forth above, I GRANT the Motion to Exclude Certain Opinion Testimony of Mary Ann Keatley, Ph.D and Dr. Rebecca Hutchins, Pursuant to FRE 702 and FRE 403, filed by Defendant Auto-Owners Insurance, Inc. [**Doc #52**], and I DENY Plaintiff's Motion to Exclude Testimony of Dr. Hal Wortzel and Dr. Stephan Kalat, filed by Plaintiff Robin Dillon [**Doc #72**].

Dated: March  14 , 2016, in Denver, Colorado.

BY THE COURT:

 s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE